908 F.2d 483
 29 Wage & Hour Cas. (BN 1417, 115 Lab.Cas. P 35,370
 Dan ABSHIRE, Dennis Carroll, Larry Frank, Bill Rickman, Tom
Blackmon, Richard Pellerin, Billie McKenzie, Bob
Temple, Barry Schulz, Jim Chapman, Bob
Turner, and Steve McLemore,
Plaintiffs-Appellants,
v.
COUNTY OF KERN, Defendant-Appellee.
 No. 88-15154.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 30, 1989.
Decided July 11, 1990.
 
 Duane W. Reno, Davis, Reno & Courtney, San Francisco, Cal., for plaintiffs-appellants.
 B.C. Barmann, County Counsel, Robert D. Woods, Chief Deputy--Litigation, County of Kern, Bakersfield, Cal., for the defendant-appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before TANG, REINHARDT and WIGGINS, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 At issue in the instant appeal is whether employees whose pay is subject to deduction for absences of less than a day are paid "on a salary basis" according to the regulations implementing the Fair Labor Standards Act. We conclude that they are not, and that therefore such employees are not "bona fide executives" exempt from the protections of the Act.
 
 
 2
 Appellants, Battalion Chiefs in the Kern County Fire Department ("Department"), brought a class action against Kern County ("County") seeking back overtime pay plus interest allegedly due them under the overtime provisions of the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. Sec. 201, et. seq. (1982), as amended, Pub.L. 99-150 (1985). The FLSA requires employers to provide overtime compensation for hours worked in excess of a prescribed work week. 29 U.S.C. Sec. 207. Under the Act, however, "bona fide executives" are exempt from the FLSA's overtime provisions. 29 U.S.C. Sec. 213(a)(1). After a bench trial, the district court ruled that the Battalion Chiefs are "bona fide executives" and are therefore not entitled to relief. The Battalion Chiefs appeal. We reverse.
 
 
 3
 The administrative regulations promulgated pursuant to the FLSA establish a "duties test" and a "salary test" for determining whether an employee is a "bona fide executive." See 29 C.F.R. Sec. 541.1(a-e) (1988); 29 C.F.R. Sec. 541.1(f) (1988). Generally, in order to claim an exemption, an employer must prove that the employee meets both tests. Here, the district court concluded that the Battalion Chiefs met both. In the alternative, the court ruled that the salary test does not apply to the Battalion Chiefs. It based this conclusion on a Department of Labor letter ruling which held that the salary test is inapplicable to persons covered by a state or local law that precludes payment of regular compensation to absent public employees. Because we find that the court erred both in concluding that the appellants met the salary test and in determining in the alternative that the salary test is inapplicable, we need not decide whether appellants satisfy the criteria set out in the duties test.
 
 
 4
 The essential facts are not in dispute. The County concedes that the Department is an employer subject to the FLSA and has been so since April 15, 1986. The ranks held by employees in the Department, and the number of employees in each rank, are as follows: Chief (1), Deputy Chief (4), Battalion Chief (28), Captain (171), Engineer (193), Firefighter (111), and Heavy Equipment Operator (6). The majority of employees who perform fire suppression duties are "56-hour fire duty" employees, whose work schedules commence at 8:00 a.m. and conclude at 8:00 a.m. two days later, for a scheduled duration of 48 hours. These employees are scheduled to work 144 hours during each 18-day cycle. Of the 28 Battalion Chiefs: 21 are permanently assigned to particular battalions; three are assigned to provide relief duty for other Battalion Chiefs who are temporarily absent; and one is assigned to each of the following units--Training, Arson, Fire Prevention, and Hazardous Material Control. With the exception of the Battalion Chiefs assigned to Training, Arson, Fire Prevention, and Hazardous Material Control, all of the Battalion Chiefs are "56-hour fire duty" employees. The others are "40-hour safety" employees.
 
 
 5
 The district court found that Battalion Chiefs are paid an amount expressed and computed as a biweekly salary and that their pay exceeds $250.00 per week. The parties have stipulated that the pay of Battalion Chiefs is subject to a potential deduction for absences from work of less than a day's duration if the absence cannot be "covered" or paid as vacation, sick leave, or accrued compensatory time off. There does not appear to be any evidence that such a deduction has in fact ever been made. The parties have also stipulated that Battalion Chiefs are paid overtime "for each tenth of an hour that they work outside of their regularly scheduled work shifts." However, appellants are only paid their usual hourly rates rather than time and one-half for their attendance at training activities outside of their work shifts, and this is one of the parties' major points of contention. Finally, the County concedes that Department personnel who are not "bona fide executives" and who have work periods of 18 days must be paid at the rate of time and one-half for all hours worked in excess of 136 hours during any such work period.[1] The forty-hour employees who are not "bona fide executives" must, of course, be paid overtime after forty hours.
 
 
 6
 The principles governing our review are well established. Exemptions to FLSA are to be narrowly construed in order to further Congress' goal of providing broad federal employment protection. Mitchell v. Lublin, McGaughy & Assoc., 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 243 (1959); Employers who claim that an exemption applies to their employees not only have the burden of proof, Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S.Ct. 2223, 2228-29, 41 L.Ed.2d 1 (1974), but they must show that the employees fit "plainly and unmistakenly within [the exemption's] terms." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). Moreover, since a determination of the Battalion Chief's salary status requires an application of the facts to the law, our standard of review is de novo. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986).
 
 
 7
 As noted above, in order to be considered a "bona fide executive" exempt from the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), an employee must be paid on a salary basis rather than on an hourly basis. In distinguishing these two methods of compensation, the regulations implementing the FLSA provide that:
 
 
 8
 An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.
 
 
 9
 29 C.F.R. Sec. 541.118(a) (emphasis added). In order to satisfy the salary test, an employee's pay cannot be subject to deductions for absences of less than a day. The Department of Labor has stated that "deductions from the salary of an otherwise exempt employee for absences of less than a day's duration for personal reasons, or for sickness or disability, would not be in accordance with sections 541.118(a)(2) and (3)." U.S. Department of Labor, Wage and Hour Division, Letter Ruling of January 15, 1986. The only court of appeals to have considered this question has also concluded that "[a] salaried professional employee may not be docked pay for fractions of a day of work missed." Donovan v. Carls Drug Co., Inc., 703 F.2d 650, 652 (2nd Cir.1983). Subjecting an employee's pay to deductions for absences of less than a day, including absences as short as an hour, is completely antithetical to the concept of a salaried employee. A salaried employee is compensated not for the amount of time spent on the job, but rather for the general value of services performed. It is precisely because executives are thought not to punch a time clock that the salary test for "bona fide executives" requires that an employee's predetermined pay not be "subject to reduction because of variations in the ... quantity of work performed"--especially when hourly increments are at issue.
 
 
 10
 There is no dispute in this case that the pay of Kern County's Fire Battalion Chiefs is subject to reduction for absences of less than a day. A Battalion Chief who did not have accrued paid or compensatory leave in a given pay period would, under Kern County's rules, have his pay docked on an hourly basis for any time that he is tardy or absent from work. If a Battalion Chief took four hours of vacation or compensatory time off from work during a pay period but had only accrued three hours of vacation or compensatory time, his pay for that period would be reduced by one hour. This scheme of compensation simply does not comport with the requirements of section 541.118(a).
 
 
 11
 Our conclusion that appellants are not paid on a salary basis is supported by the overtime policy for Battalion Chiefs. Battalion Chiefs receive overtime pay or compensatory time off for every tenth of an hour which they work outside of their regularly scheduled hours of duty. Thus, when a Battalion Chief attends meetings within the fire department or stays past the scheduled end of his shift to continue fighting a fire or to fill out a report, he receives additional compensation. Compensatory time off is provided on an hour-by-hour basis; thus a Battalion Chief who works one hour of overtime will receive one hour of compensatory time off. Such additional compensation for extra hours worked is also not generally consistent with salaried status. See Brock v. Claridge Hotel and Casino, 846 F.2d 180, 184-85 (3rd Cir.), cert. denied sub nom. Claridge Hotel and Casino v. McLaughlin, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988); Banks v. City of North Little Rock, 708 F.Supp. 1023, 1024 (E.D.Ark.1988).[2]
 
 
 12
 The County argues that Battalion Chiefs are "salaried" even though their pay is admittedly subject to deductions for part days missed because no such deductions have ever actually been made. That fact, however, is both misleading and irrelevant. That Battalion Chiefs will generally accrue sufficient compensatory or leave time to avoid an actual reduction in their take-home pay does not change the fact that deductions from pay based on hourly attendance are explicitly provided for under the County's policy. The policy provides, in effect, that the deductions shall be made first from accrued compensatory or leave time and then from the employee's base pay. However, whether the employee's base pay is the first or second source for recoupment of monies paid for hours missed is of no significance for purposes of section 541.118(a). The dispositive factor is that under the County's policy, the employee's pay is at all times "subject to " deductions for tardiness or other occurrences. Either pay is fixed and immutable, and not subject to such deductions, or it is contingent. Battalion Chiefs' pay is contingent. Section 541.118(a) does not require that a deduction for an absence of less than a day actually have been made, but only that an employee's pay be "subject to " such a deduction.[3] That, it clearly is. In short, the deductions provided for by the County's policy meet the "subject to" standard and that is all that the regulations require.[4]
 
 
 13
 The County also argues that a January 15, 1986 Wage and Hour Division Letter Ruling supports its position that the Battalion Chiefs are "salaried" employees. A paragraph near the end of the letter ruling states:
 
 
 14
 Where an occasional deduction that is not permitted is made from the salary of an otherwise exempt employee, the exemption would be lost in that workweek when the deduction is made. However, if such deductions are regular and recurring, we would question whether the employee is actually paid 'on a salary basis' and the exemption may be denied in all workweeks in which it is claimed, including those weeks when no deductions are made.
 
 
 15
 The County interprets this letter ruling as saying that whether or not employees' base pay is subject to deductions, the employees only lose their salary status for the specific weeks in which an employer actually makes a deduction not permitted by section 541.118(a). The letter ruling responded to a request by certain counties for an opinion as to whether they were compensating their employees on "a salary basis." The counties had a policy of reducing employees' pay for absences due to illness of less than a day but only when an employee had already exhausted all earned sick leave. Thus the policy presented precisely the same legal question as does the policy before us. The counties requesting the letter ruling asked specifically whether the deductions provided for in their policies could be made under the Department's regulations. The Deputy Administrator responded that they could not, and that an employee whose pay was reduced pursuant to those policies would not meet the criteria for a salaried employee exempt from the FLSA provisions. At the end of the letter ruling, after answering the counties' question in the negative, the Deputy Administrator added the ambiguous paragraph on which the County relies.
 
 
 16
 Although the Deputy Administrator's statement that an occasional unpermitted deduction would not change an individual's overall salary status appears at first glance to provide some support for the County's view, the statement would make little sense if deemed applicable to an employer's general policy providing for unpermitted deductions as a matter of course. The purpose of the statement was quite to the contrary. It was to ensure that an employer is not permanently penalized for an inadvertent or unintentional deduction. Where there is an occasional deduction made because of an error on the part of a government entity or because of an individual decision by a supervisor, there is good reason to say that the affected employee's status will be changed only for the week in which the unpermitted deduction was made. Cf. Sec. 541.118(a)(6) (where individual error made and corrected). But where an employer deliberately adopts a policy rendering employees' pay "subject to " deductions for unpermitted reasons, the frequency with which an employer is forced to apply that policy is irrelevant. If there is any cause to determine the frequency with which an employer makes unpermitted deductions, it is only to help in determining whether such a policy exists (causing the Department to "question whether the employee is actually paid 'on a salary basis' "). Here there is no question that the County's policy provides for such deductions.
 
 
 17
 To read the letter ruling differently would be to write the "subject to" language out of the Department's regulations. It is unlikely that the Deputy Administrator in a casual paragraph added after completing his answer to the counties' question--a paragraph that does not even mention the "subject to" provision--intended to make so drastic a change in the regulations. Nor, even if that were the Deputy Administrator's intention, could he have effectively done so, for an Administrator's letter ruling cannot override the express provisions of a Department of Labor regulation.
 
 
 18
 For similar reasons, we reject any suggestion that subsection (6) of section 541.118(a) is applicable to the present case. The complete text of subsection 541.118(a)(6) provides:
 
 
 19
 The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.
 
 
 20
 Once again, the thrust behind the regulations is to facilitate the determination whether an employer has a general policy of deducting for absences of less than a day or whether a deduction is made as a result of inadvertence or error. The exception in subsection (6) is for an employer that makes a one-time improper deduction and then corrects its error. This provision is of no relevance in the case of an employer that, like the County of Kern, has adopted an express policy of deducting for part-day absences when an employee has no accrued leave, and has continued to adhere to such a policy.
 
 
 21
 Finally, the County argues that even if appellants cannot be considered "salaried" under the regulations, the salary test is inapplicable to the Kern County Battalion Chiefs in light of Article XVI, section 6 of the California Constitution. In a January 9, 1987 Letter Ruling, the Wage and Hour Division announced that it would not apply the salary test to public employees "where the public employer can show that a provision contained in the applicable state or local law in effect prior to April 15, 1986, prohibits payments to an employee for absence(s) ... which are not covered by available paid leave." The County contends that Article XVI, section 6, is such a provision. In ruling in the alternative that the salary test does not apply to the Battalion Chiefs, the district court apparently accepted this argument. It erred in doing so.
 
 
 22
 Article XVI, section 6 of the California Constitution provides that the Legislature shall not "have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever." There is neither any authority nor any logic to support a holding that a general constitutional provision like Article XVI, section 6, which on its face simply bars gifts of public funds, constitutes a requirement that a deduction be made from the compensation of any salaried public employee who takes an hour or so off from work. With the exception of the district court below, no court, state or federal, in the long history of Article XVI and its predecessors has drawn the conclusion that the California Constitution's prohibition against gifts of public funds mandates the reduction of state employees' pay for absences from work.
 
 
 23
 The unique suggestion that the California Constitution precludes the state from paying any state employee, including the Governor, a full salary without making deductions for an extra long lunch hour or time off during work to get a haircut, is simply untenable. In fact, the California Constitution's prohibition against gifts of public funds is designed to ensure that public monies are expended for public, rather than private, purposes. Numerous California cases interpreting this provision have held that, where money is spent for a public purpose, "the appropriation is not a gift even though private persons are benefited by the expenditure." Los Angeles County v. La Fuente, 20 Cal.2d 870, 877, 129 P.2d 378, 382 (1942), cert. denied, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558 (1943). In the case before us, not only is the purpose public, but also the benefited employees. California courts have repeatedly recognized that the payment of salaries and employment benefits to government employees in order to remain competitive in the labor market with private companies constitutes a legitimate public purpose. See, e.g., San Joaquin County Employee's Association, Inc. v. County of San Joaquin, 39 Cal.App.3d 83, 86, 113 Cal.Rptr. 912, 914 (1974); Jarvis v. Cory, 28 Cal.3d 562, 578 n. 10, 170 Cal.Rptr. 11, 21 n. 10, 620 P.2d 598, 607 n. 10 (1980) (en banc ). Nothing in private or public employment law suggests that a "bona fide executive" must punch a time clock, nor that he must suffer a pay-deduction if he is late for work or occasionally uses a small portion of his time to take care of personal necessities, and we see no reason to construe Article XVI, section 6 of the California Constitution as proclaiming so odd a policy. The January 1987 letter ruling is therefore not a reason to hold that the salary test does not apply to the Kern County Battalion Chiefs.
 
 
 24
 For the above reasons, we hold that the appellants are not "salaried" within the meaning of section 541.118(a) and thus are not "bona fide executives" exempt from the provisions of the FLSA.
 
 
 25
 REVERSED AND REMANDED.
 
 
 
 [1]
 The Department "has elected to avail itself" of the provisions of 29 U.S.C. Sec. 207(k), which deals specifically with the calculation of maximum hours for firefighters and police, by declaring an 18-day work week for its fire protection personnel. Subsection 207(k) provides:
 (k) Employment by public agency engaged in fire protection or law enforcement activities
 No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if--
 (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
 (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,
 compensation at a rate not less than one and one-half times the regular rate at which he is employed.
 
 
 [2]
 Although the salary status of Deputy Chiefs and the Fire Chief is not at issue in this case, the emphasis on hours worked for Battalion Chiefs is even more apparent when the treatment of Battalion Chiefs is contrasted with the treatment of Deputy Chiefs (and the Fire Chief). Deputy Chiefs are not required to report absences of a short duration and thus will not have such absences charged against accrued leave time or deducted from their salary. Similarly, their salary is not subject to deduction for tardiness. Nor do Deputy Chiefs receive overtime pay or even compensatory time off for hours worked beyond their normal work hours. Thus, if a Deputy Chief worked beyond his regularly scheduled hours to fill out a report, he would not receive extra time off. Only under special circumstances might he receive compensatory time--for example, if a large fire required his presence outside of his normal work hours; even in such an instance, however, the compensatory time would be measured loosely, not balanced hour-by-hour
 
 
 [3]
 In fact, a strong argument can be made that even if deductions were required only from fringe benefits such as leave time, and not from base pay, the affected employees would still not qualify as "salaried." However, we need not decide that question here
 
 
 [4]
 Although no circuit courts have yet faced the question, a majority of district courts that have addressed it have held that employees whose pay is "subject to reduction" for such absences are not salaried, even if no deductions have actually been made. See, Banks, 708 F.Supp. at 1025 (no showing of actual deductions is needed); Hawks v. City of Newport News, Virginia, 707 F.Supp. 212, 215 (E.D.Va.1988) ("[I]t is the defendant's policy which is under attack in a suit brought under the FLSA. The fact that the policy has not been applied to a particular group of employees does not alter the policy itself."); Persons v. City of Gresham, Oregon, 704 F.Supp. 191, 194 (D.Or.1988) (that employees did not allege any instance in which county had reduced pay of employee who had no accrued leave for an absence of less than a day did not alter the fact that their pay was "subject to" such deductions); D'Camera v. District of Columbia, 693 F.Supp. 1208, 1212 (D.D.C.1988) ("[T]he test under 29 C.F.R. Sec. 541.118(a) is whether a sergeant's paycheck is 'subject to reduction,' not the frequency with which a sergeant's pay is so reduced."); Knecht v. City of Redwood, 683 F.Supp. 1307 (N.D.Cal.1987) ("That no Fire Captain has actually had his pay reduced as a result of a short-term absence since April 15, 1986 does not alter the undisputed fact that Fire Captains' pay checks are 'subject to reduction' for such absences."); but see Harris v. District of Columbia, 709 F.Supp. 238, 241 (D.D.C.1989) (declining "plaintiffs' invitation to declare them eligible for overtime compensation at this stage of the proceeding" because, since no unauthorized deduction has actually been made, the court is unable to analyze the facts and circumstances surrounding such a deduction)