Neil M. HURLEY, and all other similarly situated employees of the State of Oregon, Plaintiffs,

v.

STATE OF OREGON, et al., Defendants.

Civ. No. 92–302–JO.

United States District Court, D. Oregon.

May 14, 1993.

**428**

John E. Hoag, Aitchison, Hoag, Vick & Tarantino, Eugene, OR, for plaintiffs.

Mary Mertens James, Asst. Atty. Gen., Dept. of Justice, Salem, OR, for defendants.

### OPINION AND ORDER

ROBERT E. JONES, District Judge:

Plaintiffs in this class action are Oregon State Police ("OSP") employees who have charged the state of Oregon and other defendants with failing to pay them overtime pay in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*

Plaintiffs allege willful violations of the overtime compensation requirements of the FLSA and have moved for partial summary judgment as to liability on this FLSA claim. Defendants allege that plaintiffs are exempt from FLSA overtime provisions and have also moved for summary judgment on the FLSA claim, urging the court to dispose of the entire claim in their favor.

In a second claim not at issue here, plaintiffs allege that defendants' abolition of "exchange time" is an unconstitutional deprivation of plaintiffs' property pursuant to 42 U.S.C. § 1983.

For the reasons that follow, I find that plaintiffs are executive salaried employees and that defendants are not liable for overtime compensation. Accordingly, defendants' motion for summary judgment is granted.

## BACKGROUND AND FACTS

### 1. *The statutory scheme.*

In the landmark case *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Supreme Court held constitutional FLSA application to state and local government employees. On the heels of *Garcia* came the Fair Labor Standards Amendments of 1985, passed by Congress in part to address the public sector application of the FLSA.

Most public employees covered by the FLSA must be paid overtime. However, the amendments created a partial exemption to address the unique situation of public safety employees, who by the nature of their jobs don't have "nine-to-five" schedules. This exemption allows public agencies to adopt a 28-day work period, instead of the traditional seven-day work week, and allows them to exempt its otherwise eligible law enforcement employees from overtime for all work up to 171 hours during that 28-day period. FLSA § 7(k), 29 U.S.C. § 207(k). The state has adopted this "7(k) partial exemption" for all OSP employees holding the rank of sergeant.

The FLSA has exempted bona fide executive, administrative and professional employees from overtime pay requirements from its enactment in 1938. Administrative regulations promulgated along with the FLSA set out a "duties test" and a "salary test" to determine whether an employee is a bona fide executive. Plaintiffs say that with the exception of Gerald Miller, they all meet the duties test of the overtime exemption. That leaves the salary test at the center of this dispute, because in order to be considered a bona fide executive, an employee must be paid a salary rather than by the hour. In determining whether an employee is salaried or hired by the hour, the regulations provide in pertinent part:

> An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.118(a).

### 2. The plaintiffs.

Two groups of plaintiffs make up this case: (1) sergeants and (2) first sergeants, lieutenants and a captain ("senior officers").

Sergeants are considered managers; however, they are treated as hourly employees and are eligible for overtime pay. As noted above, they are subject to the 7(k) partial exemption; they work a 28–day work period and receive time-and-a-half overtime pay for all hours worked in excess of 171 hours.

The senior officers are considered exempt from FLSA overtime requirements and received no overtime pay.

Both groups of plaintiffs earn holiday "comp time," at the rate of 1.5 hours comp time for each holiday hour worked. They cannot accrue more than 80 hours of holiday comp time.

Plaintiffs allege that they are not salaried employees within the meaning of the FLSA. They claim they are regular "paid by the hour" employees, and that defendants are liable for plaintiffs' unpaid overtime compensation.

Defendants contend that plaintiffs are all salaried, bona fide executive or administrative employees who are exempt from the FLSA's overtime provisions. Despite plaintiffs' FLSA-exempt status, defendants say, the state has voluntarily provided overtime pay to the sergeants and offered flexible schedules for all exempt employees.

### 3. Exchange time.

Defendants established non-compensable exchange time ("exchange time") for OSP managers in September, 1988, as a way to provide time off for employees who often work in excess of eight hours a day without cutting into their vacation time. The exchange time system allowed them to accrue paid leave on an hour-for-hour basis for hours worked over eight hours a day. When the program started, eligible employees could not accrue more than 60 hours of exchange time. That limit was increased to 100 hours effective September, 1989. The exchange time had no monetary value, that is, it could not be "cashed out" upon termination or retirement.

The exchange time policy was suspended in March, 1992, as a result of policy and rule clarification by the state of Oregon Executive Department. The suspension was apparently prompted by state officials' concerns that the use of exchange time for management service and executive employees was in violation of state personnel policies, which provide that certain FLSA-exempt employees shall work without regard to overtime. The relevant section of the policy reads:

(7) Exempt Employees to Work a Professional Workweek.

(a) An employee exempt from the FLSA shall work a professional workweek on a salaried basis. This means that the employee:

(A) shall be expected to perform work assigned, following direction of the supervisor and in a location authorized by the supervisor;

(B) *shall work without regard to overtime. For this employee, there shall be no overtime standard ...*

State Personnel Policy 30.015.01(a) (emphasis added).

A memo from OSP Deputy Superintendent Leron Howland dated March 23, 1992, notified OSP officers that exchange time was eliminated as of March 9, 1992. It further stated that any accrued exchange time must be taken by June 30, 1992, and as of that date exchange time is eliminated.

Plaintiffs filed this action March 13, 1992. As noted previously, plaintiffs have filed a § 1983 claim alleging that they have a constitutionally protected property interest in their accumulated exchange time. The exchange time issue, although not mentioned specifically in plaintiffs' FLSA claim at issue here, figures prominently in this claim also because of plaintiffs' contention that the exchange time was essentially a method of paying overtime, which conflicts with defendants' position that plaintiffs are salaried employees ineligible for overtime.

## STANDARD OF REVIEW

If no factual issues exist for trial, then summary judgment is proper. The party opposing the motion must show that the fact in contention is material, that is, that it might affect the outcome of the suit under applicable law. *Lindahl v. Air France*, 930 F.2d 1434, 1436–37 (9th Cir.1991).

The opposing party's evidence is to be believed, and all reasonable inferences that may be drawn from the facts in front of the court must be drawn in the light most favorable to the nonmoving party. *Id.*

## DISCUSSION

■ Exemptions to the FLSA are to be narrowly construed in furtherance of Congress' goal of providing broad federal employment protection. *Abshire v. County of Kern*, 908 F.2d 483, 485 (9th Cir.1990). Employers who claim an exemption for their employees not only have the burden of proof but must show that their employees fit plain-ly and unmistakenly within the exemption's terms. *Id.*

Plaintiffs contend that defendants cannot meet that burden. They base their argument that plaintiffs are not salaried on three premises: (1) plaintiffs' pay was subject to deductions for absences of less than one full day; (2) plaintiffs received exchange time for hours worked in excess of eight per day; and (3) defendants' timekeeping, scheduling, leave and discipline policies treat plaintiffs as hourly employees.

I find that defendants have met their burden of showing that plaintiffs fit within the exemption's terms.

1. *Was plaintiffs' pay subject to deductions for partial-day absences?*

■ The leading case on this issue is *Abshire*, which involved fire department battalion chiefs who sought back overtime pay under the FLSA. Most of the battalion chiefs worked 48–hour shifts and were scheduled to work 144 hours during each 18–day cycle. The parties stipulated that battalion chief's pay was subject to a potential deduction for absences from work of less than a day's duration if the absence cannot be covered or paid as vacation, sick leave, or accrued compensatory time off; however, there was no evidence that such a deduction was in fact ever made.

"In order to satisfy the salary test, an employee's pay cannot be *subject to* deductions for absences of less than a day." *Abshire*, 908 F.2d at 486. In *Abshire*, there was no dispute that the battalion chief's pay was subject to reduction for absences of less than a day. The county argued that the battalion chiefs were still included in the exemption because although subject to deductions for portions of days missed, no such deductions had ever actually been made. The court found that fact "irrelevant and misleading," explaining:

That Battalion Chiefs will generally accrue sufficient compensatory or leave time to avoid an actual reduction in their take-home pay does not change the fact that deductions from pay based on hourly attendance are explicitly provided for under

the County's policy ... Either pay is fixed and immutable, and not subject to such deductions, or it is contingent. Battalion Chief's pay is contingent.

*Abshire,* 908 F.2d at 487.

In their answers to defendants' interrogatories, plaintiffs say it was their "understanding" that if they took leave of less than one day and had no accrued paid leave their salary would be reduced. They say this belief regarding partial-day leave was reinforced by the state's time-keeping procedures, which required them to record starting and stopping times and leave without pay.

Defendants respond that plaintiffs never had deductions taken from their pay reflecting leave of less than one day. They also say that plaintiffs were not *subject to* such deductions, citing to the State Personnel Policy:

An employee exempt from the FLSA shall work a professional workweek on a salaried basis. This means the employee ... may be required by the appointing authority to request to leave the work area during normal work hours, and to indicate the general purpose and length of the absence. If the employee has vacation leave, sick leave, or any other appropriate paid leave accrued, the appointing authority may deduct the length of this absence from that leave. If the employee is absent for less than one workday, and does not have enough appropriate accrued leave to cover the absence, the appointing authority shall not reduce the employee's salary for that portion of the absence not covered by paid leave.

State Personnel Policy 30.015.01(7)(a)(C).

As authority for this policy defendants point to a letter ruling from the Department of Labor ("DOL"), which reads:

Generally, deductions [of pay] for absences of less than a day are not permitted under the regulations. However, an employer can require an employee to substitute paid leave for such absences without losing the exemption for that week.

DOL Administrative Letter Ruling, July 17, 1987. A.1.

The *Abshire* court found that the offending County of Kern "had adopted an express policy of deducting for part-day absences when an employee has no accrued leave, and has continued to adhere to such a policy." *Abshire,* 908 F.2d at 493. That is distinguishable from the state of Oregon, which had no policy—express or otherwise—of deducting for part-day absences, and in fact had a policy expressly prohibiting the deduction of pay for part-day absences.

The *Abshire* court addressed the concept of reducing leave time for partial-day absences in dicta:

... [A] strong argument can be made that even if deductions were required only from fringe benefits such as leave time, and not from base pay, the affected employees would still not qualify as "salaried." However, we need not decide that question here.

*Abshire,* 908 F.2d at 487, n. 3.

Plaintiffs' belief, unsupported by evidence, that they were subject to deductions in pay for partial-day absences does not create a dispute of material fact regarding this issue in light of defendants' evidence that the state had a policy specifically prohibiting such deductions and the fact that no such deductions had ever been made. *Abshire* is distinguishable on its facts, and because the Ninth Circuit specifically declined to address the issue of deductions from vacation and sick leave, I decline to extend *Abshire*'s coverage to the situation here.

2. *Did plaintiffs' receipt of exchange time change their status from salaried to hourly employees?*

▓ Plaintiffs argue that the state's exchange time policy, which provided managers with compensatory time off for hours worked in excess of eight hours, establishes that plaintiffs were compensated for the amount of time spent on the job and cannot be considered salaried.

They point to *Abshire* for the principle that payment for any hours worked above a daily threshold establishes that an employee is being paid for the amount of time spent on

the job, rather than for the general value of services rendered.

Defendants maintain that although exchange time may have been technically granted on an hour-for-hour basis, it was earned in addition to, not as part of, plaintiffs' regular salary. In support of this argument, they point to the following DOL regulation:

[S]alary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment.

29 C.F.R. § 541.118(b). Defendants say that plaintiffs are paid a predetermined amount that makes up part of their compensation, and that in addition to that amount, they receive other compensation, such as vacation and sick leave and, until it was eliminated, exchange time.

Plaintiffs argue that administrative interpretation of the regulations specifies that commissions and profit bonuses are to be included in the definition of "other compensation." Defendants counter that those items are only examples of what may constitute "other compensation," and point to the following wording regarding "minimum guarantee plus extras" in the pertinent regulation:

Another type of situation in which the requirement will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulation in any week in which the employee performs work.

29 C.F.R. § 541.118(b).

Defendants further argue that exchange time was accrued for *directed* effort over plaintiffs' regular schedules, not just excess voluntary time worked. In this respect, although it was earned on an hour-for-basis, it was accrued when plaintiffs came back to work after their shifts had ended or had to work on a day off. As plaintiff Windsor explained in his response to interrogatories:

For example, if I had to respond to an accident or fatality, I would earn exchange time for the "hard time" spent in such work. I was not paid exchange time for reasons such as having a long day in the office. I had to explain why I was earning exchange time. Accrual of exchange time was subject to a one-hundred (100) hour ceiling. Once I reached the ceiling, if I accrued additional exchange time, it was simply lost.

In *Abshire*, the parties stipulated that the battalion chiefs were paid overtime for each tenth of an hour they worked outside of their regularly scheduled work shifts. *Abshire*, 908 F.2d at 485. The court looked to that overtime policy as an additional factor in concluding that the battalion chiefs were not salaried:

Battalion Chiefs receive overtime pay or compensatory time off for every tenth of an hour which they work outside of their regularly scheduled hours of duty. Thus, when a Battalion Chief attends meetings within the fire department or stays past the scheduled end of his shift to continue fighting a fire or to fill out a report, he receives additional compensation. Compensatory time off is provided on an hour-by-hour basis; thus a Battalion Chief who works one hour of overtime will receive one hour of compensatory time off. Such additional compensation for extra hours worked is also not generally consistent with salaried status.

*Abshire*, 908 F.2d at 486.

The situation in *Abshire* differs from the one in this case in two respects. First of all, the battalion chiefs could receive overtime *pay* for hours worked over their regularly scheduled hours of duty. In contrast, the exchange time earned by the OSP plaintiffs had no monetary value. Plaintiffs earning only exchange time (as opposed to overtime) did not have the option to get extra pay instead of time off, and the exchange time could not be "cashed out" when plaintiffs left OSP or retired.

Secondly, the battalion chiefs received overtime pay or comp time for every *tenth of an hour* worked. Compare that to the situation here, where it is undisputed that plaintiffs did not receive exchange time if they worked through their lunch hour or stayed

past 5 p.m. to finish up reports. Exchange time was reserved for those times when plaintiffs came back on duty after a regular shift or worked on what was to have been a day off, and in defendants' words, "was initiated to acknowledge the extraordinary service occasionally required of managers."

Accordingly, I find that defendants' policy of offering exchange time to senior officers did not transform those officers from salaried employees into hourly employees.

3. *Did defendants, by their timekeeping, scheduling, leave and discipline policies treat plaintiffs as hourly employees?*

 Plaintiffs assert that "rigid attendance and time keeping requirements are not consistent with salaried status." *Service Employees Intern. v. County of San Diego,* 784 F.Supp. 1503, 1510 (S.D.Cal.1992). That may be true in cases where employees' paychecks vary from week to week in reflection of the hours actually worked. However, such is not the case here, where it is undisputed that plaintiffs received the same monthly wage regardless of the number of hours on the job that they recorded on their timecards.

Defendants say that the state used time cards for the following purposes: tracking employees' productivity, determining employees' vacation leave, compiling statistics for use in obtaining federal funds and defending OSP's budget allocations during the legislative session. However, of primary significance is that such accounting is not tied to the amount of pay received; thus, keeping track of time on the job is not inconsistent with salaried status. I also find that scheduling employees for specific shifts and coordinating vacation and other leave does not destroy plaintiffs' salaried status.

 I now turn to plaintiffs' final argument on the salary issue: that OSP policies providing for salary deductions as disciplinary measures destroy plaintiffs' salaried status. Plaintiffs argue that such policies are in direct conflict with federal regulations:

Penalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status. Safety rules of major significance include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines.

29 C.F.R. § 541.118(a)(5).

Plaintiffs urge the court to court to find that the dispositive issue is not the timing of the disciplinary deductions from pay, but whether or not "salary" was subject to deductions for reasons other than violations of safety rules of major significance. Plaintiffs claim that the regulation "does not even hint at a prospective/retroactive distinction in penalties."

However, the plain language of 29 C.F.R. § 541.118 does not support plaintiffs' interpretation. In setting out permissible and impermissible deductions, the regulation refers to "salary" as a "predetermined amount." Essentially, employers cannot make prohibited deductions from the salary a employee *has already earned* and maintain that employee's salaried status. The regulation does not speak to adjustments—reductions or otherwise—to salary to be negotiated at the start of a new period and to be earned in the future.

Defendants operate under a progressive discipline policy for employees such as plaintiffs who are unrepresented by the union. While salary reductions are never imposed retroactively, one form of discipline is to temporarily reduce the salary of an employee for a specified number of months.

Plaintiffs were never subject to having their pay docked for disciplinary reasons. Furthermore, although their timecards may have varied from week to week, their pay did not reflect those variations. Accordingly, defendants' timekeeping, scheduling, leave and discipline policies do not destroy plaintiffs' salaried status.

CONCLUSION

1. *The sergeants.* Pursuant to OSP's adoption of the 7(k) partial exemption, sergeants are paid overtime on the basis of hours worked in excess of 171 in a 28–day period. (Because plaintiff Miller is a sergeant and apparently subject to the exemp-

tion, I find he is included in this category of plaintiffs.) As part of the exchange time program, sergeants could earn exchange time for those hours worked between 160 and 171. I find that defendants have no overtime liability for exchange time sergeants earned for hours worked between 160 and 171. Additionally, if plaintiffs (such as Brady) earned exchange time for hours worked over 171 and elected to use that exchange time in the form of the time off, I find that those hours were reimbursed and defendants have no liability to pay such plaintiffs overtime wages for those hours in excess of 171.[1]

2. *The senior officers.* I find that defendants have no overtime liability for the senior officers as defendants' policies were not inconsistent with the senior officers' status as salaried employees.

I find no dispute of material facts regarding the issue of liability and rule as a matter of law that defendants have no overtime liability to plaintiffs. Defendants' motion for summary judgment, # 79–1, is GRANTED.

Plaintiffs' motion for partial summary judgment as to liability, # 76–1, is DENIED.

---

1. My ruling on this issue would be different if the evidence showed that defendants required plaintiff sergeants to take exchange time in lieu of overtime pay. However, I find no evidence of such a requirement in this record.