James STEWART, et al., Plaintiffs,

v.

CITY AND COUNTY OF
SAN FRANCISCO, et
al., Defendants.

Donald K. CHAN, et al., Plaintiff,

v.

CITY AND COUNTY OF SAN
FRANCISCO, Defendant.

Nos. C–90–3206–CAL, C–91–0922–CAL.

United States District Court,
N.D. California.

Oct. 5, 1993.

Christopher D. Burdick, David P. Clisham, San Francisco, CA; Gary M. Messing and Cathleen A. Williams, Carroll Burdick & McDonough Law Offices, Sacramento, CA; Duane W. Reno, Davis Reno & Courtney; Stewart Weinberg, Van Bourg Weinberg Roger & Rosenfeld, San Francisco, CA; and Lynn Rossman Faris, Operating Engineers Local Union No. 3, Public Employees Div., Alameda, CA, for plaintiffs.

Louise H. Renne, City Atty., Jonathan V. Holtzman, Special Asst. to City Atty., and Arthur A. Hartinger, Deputy City Atty., San Francisco, CA, for defendants.

## OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

LEGGE, District Judge.

This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"). Plaintiffs are employees of defendant City and County of San Francisco (the "city"), earning between approximately $40,000 and $100,000 per year.[1] The FLSA originally excluded government employees. In 1974, Congress amended the FLSA to include public employees within its scope. Pub.L. 93–259, 88 Stat. 55. However, ·its application to state and local employees was struck down by the United States Supreme Court in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). In 1985, the Supreme Court reversed *National* in *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), and Congress

again amended the FLSA in response to *Garcia,* making it applicable to state and local employees. Pub.L. 99–150, 99 Stat. 787; 29 U.S.C. §§ 203(e), 207(*o*), 207(p).

Plaintiffs claim that they are entitled to overtime compensation under the FLSA, sections 201 and following. The city claims that plaintiffs are exempt from the overtime provisions of the FLSA because they are "employed in a bona fide executive, administrative, or professional capacity," within the meaning of 29 U.S.C. § 213(a)(1) (the "managerial exemption").

### I.

The issues of liability were bifurcated from the issues of damages. The parties have made cross-motions for summary judgment regarding the so-called "salary test" for the managerial exemption; the meaning and significance of that test is discussed below. Discovery on the liability issues presented in these cross-motions has been completed. The motions were briefed, argued and submitted for decision. The court has also received an *amicus curiae* brief from the Secretary of Labor, which does not so much support the position of either party as it does support the validity of the current regulations adopted by the Department of Labor. The court has read the moving and opposing papers, the *amicus curiae* brief, the legislative history of the applicable congressional enactments, the regulations adopted by the Department of Labor over the years, the record of the case, and other applicable authorities.

The court finds that there are no genuine issues of material fact on the questions raised in the cross-motions. The court concludes that summary judgment on the salary test must be granted to the defendant city for the reasons discussed below. Proceedings on the second test for the managerial exemption, the so-called "duties test", will now be scheduled.

### II.

The issue in these cross-motions is the application of the managerial exemption to

---

1. 70% of the *Stewart* plaintiffs and 86% of the *Chan* plaintiffs earn over $50,000 per year.

the overtime requirements of the FLSA; and more specifically, the salary test for this exemption. The exemption is provided by section 213(a)(1), and was part of the FLSA from its very inception in 1938. And the statutory language of the exemption has remained generally the same, insofar as it applies to this case, since that date.

In creating the exemption, Congress *expressly* gave to the Secretary of Labor the authority to define by regulations the terms and limitations of the exemption, subject to the provisions of the Administrative Procedure Act. Because of that express delegation to the Department of Labor, the issues in this case initially require more examination of the regulations than of the statute. That is, the language of section 213(a)(1) does not itself resolve the issues, but rather they must be resolved by reference to the regulations adopted over the years by the Department of Labor under its broad statutory mandate. Of course, the court must also address whether the regulations are consistent with that mandate and with the intent of Congress.

Acting in response to the congressional delegation of authority, the Department of Labor has enacted various regulations over the years since 1938. The ones with which we are concerned are: (1) the regulations as amended in 1954, 19 Fed.Reg. 4406, which remained in effect until 1991; (2) the interim rule of September 6, 1991, 56 Fed.Reg. 45824 and 45828; and (3) the current form of the regulations passed on August 19, 1992, 57 Fed.Reg. 37666.

In summary, the regulations have defined two tests for determining whether an employee is exempt as managerial. One is the salary test, 29 C.F.R. § 541.118, and the other is the duties test, 28 C.F.R. § 541.103 *et seq.* If both of those tests are applicable— the city contends that they are not—then an employee's salary and duties must meet *both* tests if the employee is to be exempt as managerial.

The important issue in this case is whether the salary test applies to the city. That issue poses a conflict between:

(1) 29 C.F.R. § 541.118(a), which contains specific requirements that a managerial employee be paid a salary, and that the salary be the same regardless of the quantity or quality of an employee's work.

And (2) the charter and practices of the city, which require its employees to maintain hourly time records, and to be penalized for various absences. San Francisco Charter § 8.400(g). This provision of the city charter was passed to prevent corruption in city government. It is a "public accountability" requirement similar or identical to those of most municipalities in the United States. The requirement is designed to prevent politically appointed employees who do not actually work from drawing a salary. The city argues that it is central to the integrity of city government that it be able to verify through its payroll records that its employees, no matter how exalted, are not paid for work they have not done. This type of local legislation has been acknowledged as valid and necessary protective legislation for municipal governments.[2]

The city contends that: because of these generally accepted municipal requirements, it must keep hourly records and must penalize absences; but those requirements conflict with the salary test regulations under the FLSA; and, the regulations therefore deny to cities the managerial exemption provided by the FLSA. The city therefore contends that it is not governed by the salary test of the regulations.

### III.

Does the salary test apply to the city? Because the answer to this question lies initially in the various regulations passed by the Department of Labor over the years, it is not possible to answer that question in the abstract. Rather, the question is related to others: (1) If a salary test applies, which

---

2. "Public accountability ... forms the foundation for many governmental administrative practices, including most public sector pay systems, and is derived from the desires of taxpayers that their government be accountable to them for expenditures from the public treasuries.... [T]he public interest does not tolerate wasteful and abusive excesses such as padded payrolls or 'phantom' employees." 57 Fed.Reg. 37676 (1992).

version of the regulations define it? And (2) under whatever regulations are applicable, if any, is the city in compliance with their requirements?

This interdependence of issues results from the nature of the attacks which the city, and in some cases the plaintiffs, make upon the regulations. Plaintiffs contend that the 1954 regulations are applicable, that they are valid and apply to city governments, and that the city is not in compliance. The city attacks the validity of the salary test regulations, based upon the Administrative Procedure Act and the various amendments to the regulations. The city also argues that the regulations violate *Bowen v. American Hospital Assn.*, 476 U.S. 610, 106 S.Ct. 2101, 90 L.Ed.2d 584 (1986), in that they significantly alter the balance of powers between state and federal governments, when it is not necessary to do so to achieve the goals of Congress. Similarly, the city claims that the application of the salary test would violate the Tenth Amendment to the U.S. Constitution. The city grounds its Tenth Amendment claim on the Supreme Court's decision in *Gregory v. Ashcroft*, —— U.S. ——, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), where the Court held that the usual constitutional balance between the state and federal government should not be altered without a plain statement of congressional intent.

This court should not reach the constitutional issue if the dispute can be resolved on any ground short of that. The court believes that it is first required to review the history of the regulations. After determining which regulations are on their face applicable, reference to the facts is necessary in order to determine whether the issue of the city's compliance can be resolved without a genuine dispute of material fact. The court must also consider whether the applicable regulations are invalid for statutory reasons. Only after that should the court, if necessary, consider the Tenth Amendment argument.

■ In reviewing the regulations, this court's powers are constrained. When Congress has delegated to an administrative agency the authority to define statutory terms, a court's review of the agency's regulations is narrow. *Citizens to Preserve Over-*

*ton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Judicial review of agency action requires deference. This court is not free to substitute its judgment for that of the agency. *American Meat Institute v. United States Dept. of Agriculture*, 646 F.2d 125, 127 (4th Cir.1981). And the burden rests upon the party seeking to strike down a regulation to justify that result.

The courts do have a role in this legislative-administrative equation, however. While Congress granted the Department of Labor explicit authority to define and limit the managerial exemption, the agency's power is nevertheless limited. The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, requires federal courts to:

> hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

5 U.S.C. § 706(2). Further, the Department of Labor's salary test regulations cannot conflict with the intent of Congress:

> If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Therefore, if the city can show that the salary test regulations, as applied to it, are contrary to the intent of Congress, then the regulations cannot be applied to the city. Plaintiffs argue that it is the task of Congress and not the judiciary to change the law. This is true. However, the issue raised

here is largely one of a conflict between the law of Congress and the regulations of the agency. Congress need not change a statute in order to conform to an agency's regulations; rather the regulations must conform to the intent of Congress.[3]

### IV.

Plaintiffs assert claims for overtime compensation from April 15, 1986 to date. It is therefore necessary to consider the three versions of the regulations cited above. For purposes of this case, the first version which we need to consider are the regulations in effect after the 1954 amendments, published in 19 Fed.Reg. 4405. Those regulations remained in effect, insofar as applicable to this case, until 1991. Those regulations included a salary test which was difficult, if not impossible, for municipalities to meet. But it was not until the *Garcia* decision and the congressional legislation in 1985 that cities needed to be concerned about that issue.

The second version to be considered was published in 1991, 56 Fed.Reg. 45828. This rule proposed an amended salary test, and at the same time enacted an interim final rule on the subject. 56 Fed.Reg. 45824. The impact of the 1991 amendments on the 1954 version of the regulations is very significant to this case.

Finally, the current regulations were passed in 1992. 29 C.F.R. § 541.5(d); 57 Fed.Reg. 37666.

All three forms of the regulations provide some sort of salary test. The objective of the Department of Labor's amendments in 1991 and 1992 was to make the changes necessary to accommodate the interests of public entities and their employees, without abandoning the salary test completely.

A similar issue was confronted by the Ninth Circuit in *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir.1990). The Ninth Circuit there considered the application of the 1954 salary test regulations to fire districts, and made various decisions which applied the salary test to those districts. Plaintiffs argue that since the Ninth Circuit concluded that the 1954 salary test of the regulations was valid in *Abshire*, the regulations are valid here too. However, the present case is different for at least two reasons. First, the Department of Labor changed the regulations after, and largely in response to, *Abshire*. 56 Fed.Reg. 45824, 45828; 57 Fed. Reg. 37672. Thus unlike the regulations considered by the Ninth Circuit in *Abshire*, this court is also concerned with the regulatory actions of the Department after *Abshire*. Second, the city has a city charter provision, which states that "no officer or employee shall be paid for a greater time than that covered by his actual service." San Francisco City Charter § 8.400(g). *Abshire* did not discuss such a specific provision, but only a general California prohibition against gifts. This court's consideration of the present regulations is therefore not controlled by the decision in *Abshire*.

### A.

■ The court first considers the 1954 version of the regulations.

Since Congress explicitly provided for the managerial exemption to the overtime requirements of the FLSA, 29 U.S.C. § 213(a)(1), there can be no doubt that Congress intended this exemption to be available to all employers and employees covered by the act. The Department of Labor's 1954 salary test regulations defined and preserved the managerial exemption in the private sector. But at that time neither the FLSA nor the regulations contemplated application to the public sector. That did not occur until the 1985 *Garcia* case and congressional legislation. As the Department of Labor has stated, there is no evidence that Congress knew that the 1954 salary test would eliminate the managerial exemption when the FLSA became applicable to municipalities in 1985.

The Department of Labor has itself concluded that its 1954 salary test regulations as applied to municipalities were contrary to the intent of Congress. Because the Depart-

---

**3.** Further legislation on this exemption is under consideration; S. 1354 was introduced on August 4, 1993; 103d. Congress, 1st Session.

ment's conclusions are central to the issue of the validity of the 1954 regulations, extensive quotation is appropriate:

Some State and local government jurisdictions operate pay policies based on constitutional or statutory provisions while others are derived from regulations or policies that have evolved over the years. The rules and procedures of many of these pay systems were in place long before FLSA coverage of the public sector brought by the 1985 *Garcia* decision. Such pay systems are generally premised on a concept derived from principles of public accountability.... At the time of *Garcia*, therefore, most public employers had in place compensation systems requiring all employees, regardless of how paid, to use accrued leave time or incur a reduction in pay for any absences from work. Such Governmental payroll systems prohibited paying employees for time not actually worked that was not covered by accrued leave.... Thus all public employees under such systems, including highly compensated managers who otherwise would clearly be exempt from the overtime requirements, could be classified as non-salaried and thus non-exempt. As a consequence, *few public employers compensated employees in a manner that would satisfy the "on a salary basis" provision required by the regulation.* 57 Fed.Reg. 37667.

However, it is clear from a plain reading of FLSA's legislative history in 1974 that *Congress intended the Section 13(a)(1) (i.e., the bona fide managerial exemption) exemption to be available for public sector employees.* Congress presumably was unaware that, because many public sector compensation systems preclude payment for hours not worked, these systems would, solely for that reason, be found to fail to meet the regulatory "salary basis" component of the exemption. In light of the public accountability principles prevalent in public sector pay systems, the regulatory requirements adopted before Congress extended FLSA coverage to State

and local governments simply could not operate in a manner that effectively distinguished exempt from non-exempt public employees. *The regulations were thus out of harmony with the intent of the statute because State and local governments could not practically avail themselves of the exemption intended by Congress, and thus were inappropriate as applied in the public sector.* 57 Fed.Reg. 37672.

In sum, the Department of Labor, the agency charged by Congress with the task of defining the exemption and the author of the 1954 regulations, has concluded that application of the 1954 regulations to municipalities which have public accountability laws is contrary to the intent of Congress.

██ The Department's position is correct. Courts must strike down regulations of an agency that are contrary to the intent of Congress, *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. at 842, 104 S.Ct. at 2781, and those that are arbitrary or capricious, 5 U.S.C. § 706(2)(A). For the reasons discussed above, application of the 1954 regulations to municipalities is contrary to the intent of Congress. Applying the regulations to the city would violate the principles of *Chevron*. And applying regulations that the drafting agency itself has concluded violate congressional intent would be capricious under the Administrative Procedure Act.[4]

The 1954 salary test regulations of the Department of Labor do not apply to defendant, because to apply the salary test to the city would be contrary to the intent of Congress. The city therefore cannot have been in violation of the salary test regulations until 1991 at the earliest. That is the year that the Department of Labor promulgated the amended regulations with municipalities in mind.

### B.

The second regulations that must be considered are the Department of Labor's inter-

---

[4]. Since the court has decided that the regulation violates both the principles of *Chevron* and the Administrative Procedure Act, the court does not reach defendant's contentions that the regula-

tions also violate the Tenth Amendment under the rule of *Gregory* and the federalism standard of *Bowen*.

im rules of September 6, 1991. 56 Fed.Reg. 45824, 45828. The Department of Labor passed the interim rules when it became aware of the unintended effect that the salary regulations were having on public employers. 57 Fed.Reg. 37666–67. Plaintiffs argue that this rule is procedurally invalid because the Department of Labor failed to comply with the notice and comment requirements of 5 U.S.C. § 553. This argument is supported by *Service Employees Intern. v. County of San Diego,* 784 F.Supp. 1503, 1512 (S.D.Cal. 1992).

However, this court need not reach that argument. Plaintiffs argue the invalidity of the 1991 regulations to support their position that the 1954 form of the regulations still apply. But this court has concluded above that the 1954 regulations are invalid as contrary to congressional intent. If the 1991 regulations are also invalid, as plaintiffs contend, then no salary test was applicable to the city until the 1992 regulations became effective. If the 1991 regulations are valid, then they could apply to the city. But the 1991 regulations are essentially the same as those of 1992, and need not be discussed separately here.

## V.

The current salary test regulations were published in 1992. For the purposes of this case, the 1992 regulations are the same as the 1991 interim final rule. The parties have not raised any procedural objections to the adoption of the 1992 regulations.

## A.

The current regulations, 29 C.F.R. § 541.-5d, were passed on August 19, 1992. Those regulations substantially modified the 1954 salary test as applied to municipalities, in an attempt to accommodate public accountability laws.

> An employee of a public agency who otherwise meets the requirements of § 541.118 [the salary test] shall not be disqualified from exemption under §§ 541.1, 541.2 or 541.3 on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to

principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because—

> (1) permission for its use has not been sought or has been sought and denied;

> (2) accrued leave has been exhausted;

> (3) the employee chooses to use leave without pay.

57 Fed.Reg. 37677.

The effect of this regulation for the purposes of this case is that an employee of the city who otherwise qualifies for the managerial exemption and who accrues personal or sick leave, does not lose exempt status even if the city deducts for hours the employee has not worked.

Both sides argue, for various statutory and constitutional reasons, that the 1992 regulations are invalid. The result would be that if either party is correct and the 1992 regulations are invalid, then there is no salary test that applies to the city. However, this court need not address those invalidity arguments if it is clear from the record, with no genuine issue of material fact, that the city is in compliance with the 1992 regulations.

## B.

We start with the statute and the general framework of the regulations. Section 213(a)(1) exempts from the FLSA wage and hour requirements any "employee employed in a bona fide executive, administrative or professional capacity." As stated, the Department of Labor has enacted regulations defining this exemption. First, an exempt employee must have primarily managerial or supervisory duties. 29 C.F.R. §§ 541.103–541.117. This is called the duties test. Second, an exempt employee must earn at least $250/week. 29 C.F.R. § 541.117. Third, an exempt employee must be paid on a salary basis. 29 C.F.R. § 541.118.

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. 29 C.F.R. § 541.118.

In essence, an employee is paid on a salary basis so long as she or he is paid a predetermined amount which is not subject to deductions due to quantity or quality of work. Under the 1992 regulations applicable to municipalities, the city can preserve an employee's salary basis status even if it makes salary deductions based upon personal absences. 29 C.F.R. §§ 541.118(a)(2) and 541.-5d(a). This allows a public employer to pay an employee based on the actual hours he or she has worked, and still preserve the employee's salaried status. However, if the city disciplines an otherwise salaried employee through deductions for anything other than major safety violations, it violates the current regulations. 29 C.F.R. § 541.118(a)(5).

The civil service commission of the defendant city is responsible for determining which employees are so exempt. It denominates these employees as "Z category." They are the employees whom the city has determined fulfill the duties requirement, receive a salary, and are paid in accordance with the FLSA. San Francisco Charter § 3.661; Memorandum to All Appointing Officers from General Manager Personnel (July 1, 1985); San Francisco Civil Service Commission Employee Handbook.

Plaintiffs argue that the city is in violation of these new regulations. They contend that they are not paid a predetermined salary, that they are required to account for their hours, and that their salaries are subject to deductions. Plaintiffs point out that they are listed as "hourly" employees in the city's

official payroll manual—although they concede that all city employees are so defined—and that their salaries are determined by the number of hours they work. They are subject to time deductions for any personal leave, and they receive compensatory time for extra hours worked. Plaintiffs argue that these factors make them ineligible for the managerial exemption regardless of the duties they perform or the amounts they are paid.

Yet these are factors which the new regulations expressly cover. A city worker meets the salary test if he or she receives a basic compensation, even if it is subject to deductions for certain absences. The new regulations allow a public salaried employee to have his or her wages reduced for personal absences that are not accounted for by the employee's accumulated leave time. The city is prohibited by the city charter from paying any employee for hours not worked. San Francisco Charter § 8.400(g). In order for the city to comply with that requirement, it must keep track of when employees do not work. On the other hand, the city must credit employees with compensatory time off for those extra hours that they do work. *Id.* It is immaterial whether the salary is calculated by multiplying a base salary by hours worked or whether the salary is calculated by deducting absences from a base salary. What is relevant is whether the employee can expect a consistent paycheck regardless of quantity or quality of work, while understanding that pay will be reduced for any personal leaves of absence that are not covered by accumulated personal or sick leave. These salary adjustments are authorized by the 1992 regulations. 29 C.F.R. § 541.5d.

Plaintiffs argue that the city also violates the 1992 regulations because its policies permit it to make disciplinary deductions from salary. A few days after the publication of the those new regulations, however, the city clarified its disciplinary policy in order to ensure that it complied with the regulations. The city announced that exempt employees could only have their pay docked for major safety related infractions.[5]

---

**5.** It is unclear from the record whether exempt employees were ever subject to disciplinary sus-

Plaintiffs have not presented any evidence, and apparently do not claim, that any of them has actually suffered a paycheck deduction. Plaintiffs argue that the possibility of such a deduction makes them ineligible for the managerial exception to the FLSA's overtime provisions. In *Abshire,* the Ninth Circuit held that the fact that the fire fighters were subject to deductions was enough to violate the regulations, even if no deductions were actually made. The city nevertheless passes the test in *Abshire.* After the 1992 regulations, the city's employees neither had their pay docked nor were they subject to such a deduction that is not authorized by the regulations. By both policy and practice, the city has not made exempt employees subject to disciplinary suspensions since the 1992 regulations went into effect.

The court concludes that there is no genuine issue of material fact regarding the city's compliance. The city pays exempt employees a predetermined salary that is not subject to reduction due to the quality of the work performed. Exempt employees know how much they will earn each week, and they know that their salaries will be reduced if they take personal time off that is not accounted for by accumulated leave time. While their salary is subject to deductions based upon hours not worked and violations of major safety rules, such deductions are permitted under the current regulations. Therefore, the city's practices, policies and procedures are in compliance with the 1992 regulations.

### C.

Because of that conclusion, the court need not address the parties' other statutory and constitutional challenges to the validity of the 1992 regulations. If the regulations are valid, other the court has already ruled that the city is in compliance. And if the 1992 regulations are invalid, then there is no salary test that is applicable to the city.

pensions prior to September 8, 1992, the date on which the city clarified its disciplinary deduction

### VI.

It is therefore ordered that summary judgment is granted in favor of the city on the salary test issue. That is, the 1954 regulations regarding that test are invalid because they are contrary to the intent of Congress. And even if the 1992 regulations are valid and applicable to the city, the city is in compliance.

The effect of the duties test on the managerial exemption must still be determined. The parties have not yet addressed that portion of the exemption. A status conference is set for November 12, 1993 at 11:00 a.m. to discuss the scheduling of the further proceedings.

IT IS SO ORDERED.