**Lee A. JACKSON, et al., Plaintiffs,**

v.

**COMMONWEALTH OF KENTUCKY, Defendant.**

**Civ. A. Nos. 93–65, 94–38, 95–18 and 95–39.**

United States District Court,
E.D. Kentucky,
at Frankfort.

June 21, 1995.

C. David Emerson, Emerson & Bayer, Lexington, KY, for plaintiffs.

James R. Adams, William W. Ford, III, Frost & Jacobs, Cincinnati, OH, Thomas J. Hellmann, Office of Atty. Gen., Frankfort, KY, for defendant.

## MEMORANDUM OPINION

WEHRMAN, United States Magistrate Judge.

## I. INTRODUCTION

The individual plaintiffs in this consolidated case are employees of the Commonwealth of Kentucky. The plaintiffs allege that the Commonwealth misclassified them as "exempt" employees under the Fair Labor Standards Act ("FLSA") and claim that the Commonwealth owes them overtime pay for hours they worked in excess of 40 per week during the three year period preceding the filing of their complaints. Under the FLSA, non-exempt employees must be paid a minimum wage as well as "overtime" at a rate of one and one-half times their regular wage for hours in excess of 40 per week. Exempt employees are not required to be paid overtime.[1]

The FLSA contains exemptions for "executive, administrative, or professional" employees but does not define those terms. Instead, Congress delegated the authority to define those terms through rulemaking to the Department of Labor ("DOL"). The DOL has defined the relevant terms in part through the creation of a rule which is called the salary test. Currently pending before the court are the parties' cross-motions for partial summary judgment concerning the issue of whether the salary test set forth in 29 C.F.R. § 541.118 should be applied to public employers like the Commonwealth.

DOL regulations have required since 1954 that employees who fall under what is commonly known as the white collar exemption to the FLSA be paid "on a salary or fee basis." 29 C.F.R. § 541.118 states that an employee will be considered to be paid "on a salary basis" if he or she is paid the same predetermined amount each pay period which "is not subject to reduction because of variations in the quality or quantity of the work performed" subject to limited exceptions.

The parties agree that none of the limited exceptions to the salary test permit deductions to a worker's pay for minor disciplinary infractions.[2] However, deductions may be made for whole days or weeks pursuant to vacation and sick leave policies. *See* § 541.118(a). Until 1991, if an employer made deductions to an employee's pay for *partial*-day absences, the employee was considered to be non-exempt.

Since 1960 the Commonwealth like many states has had in place statutory provisions providing that its employees may, as a means of discipline, be "dismissed, demoted, suspended, or otherwise penalized." Kentucky's regulatory scheme permits deductions to an employee's pay as a method of discipline for infractions which are clearly not major safety violations, and likewise permits deductions for partial-day absences. Kentucky's statutes and corresponding regulations do not distinguish between exempt and nonexempt employees. *See* KRS § 18A.095, 18A.075, 18A.0751; 101 KAR 1:345. Thus, if the salary test applies to the Commonwealth as a public employer, it has arguably violated the FLSA by classifying as "exempt" employees whose pay is subject to deductions for disciplinary infractions which are not infractions

---

**1.** As of November 1994, the Commonwealth employed approximately 40,555 employees, of whom 10,150 had been classified as "exempt" under § 13(a)(1) of the Fair Labor Standards Act.

**2.** By contrast, one of the limited exceptions permits deductions for "infractions of safety rules of major significance," including rules "relating to the prevention of serious danger to the plant or other employees, such as rules prohibiting smok-

of safety rules of major significance.[3]  In addition, the Commonwealth has classified as "exempt" employees whose pay is subject to partial-day absences, which violated the salary test prior to its 1991 amendment.

To avoid this result, Kentucky advances two arguments: 1) the salary test is inapplicable to state and local government employees because it is contrary to the intent of Congress; and 2) the failure of the DOL to amend the test to eliminate the application of the disciplinary prong to public employers is arbitrary and capricious.

## II.  HISTORICAL BACKGROUND

The FLSA's application to public employers has had a checkered history.  In 1960 when Kentucky's disciplinary provisions were promulgated, the FLSA did not apply to the public sector.  Congress initially extended coverage to public employees in 1974, but in 1976, the Supreme Court held in *National League of Cities v. Usery* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) that Congress could not apply the FLSA to public sector employees.  The Supreme Court subsequently overruled *Usery* in *Garcia v. San Antonio Metro. Trans. Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).  In *Garcia,* the Supreme Court specifically held that treating public employers the same as private employers did not violate the Tenth Amendment.  In response to *Garcia,* Congress amended the FLSA later in 1985 to provide some relief to public employers during a temporary adjustment period.

The 1985 amendments did not address the DOL's salary test, but in 1987 the DOL issued an "Enforcement Policy" noting the difficulty which state and local governmental employers had experienced with the aspect of the salary test which prohibited any deduction from pay for absences on an hourly basis.  The DOL noted that virtually all public employers had policies which prevented the expenditure of public funds for time not actually worked by employees and not covered by annual, sick, or other paid leave—in other words, for leave without pay.  The policy stated that DOL would not preclude public employers from making such deductions from otherwise "exempt" employees while revisions to the regulations for public employers were being considered.  In addition to the proposed revisions to the salary test, the policy noted that a commenter had proposed eliminating the salary test entirely for public employers.

In response to concerns by state and local public employers that their liabilities would be devastating to otherwise exempt employees who had rarely or never had any deductions made to their salaries, DOL ultimately amended a portion of the salary test for public employers.  As of September 6, 1991,[4] 29 C.F.R. § 541.5d specifically provided that public employees would not be disqualified from being categorized under the white collar exemption if their pay was subject to deductions "pursuant to principles of public accountability" which required deductions for leave time taken after accrued paid leave was exhausted.

## III.  APPLICATION OF THE SALARY TEST TO PUBLIC EMPLOYERS

Kentucky argues in this case that the same principles of public accountability which require public employers to make partial-day deductions under long-established pay-leave systems also require public employers to make disciplinary-related deductions under long-established disciplinary systems.  Although the promulgation of § 541.5d amended the salary test to permit public employers to make partial-day deductions, Kentucky argues that the DOL's failure to make a similar amendment to permit public employers to

ing in explosive plants, oil refineries, and coal mines."  29 C.F.R. § 541.118(a)(5).

**3.**  As of September 19, 1994, the Commonwealth temporarily halted enforcement of pay deductions for disciplinary infractions by exempt employees, "pending final resolution of some recent Federal Court decisions and the United States Department of Labor opinion letters."

**4.**  Technically, § 541.5d was not promulgated until August 19, 1992.  However, on September 6, 1991 the Department of Labor promulgated an interim final rule which was substantially the same as § 541.5d.

make disciplinary deductions is arbitrary and capricious. Because it asserts that the disciplinary prong of the salary test cannot be applied to public employers in a way consistent with the intent of Congress, Kentucky concludes that no portion of the salary test can be applied to public employers, even after the promulgation of § 541.5d.

In essence, Kentucky complains not about the action of the DOL in promulgating the salary basis regulations, but about the inaction of the DOL in failing to amend the regulations to limit the application of the test to private employers. The standard for determining whether the DOL's inaction was arbitrary and capricious was set forth in *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). In *Chevron,* the Supreme Court held that if the intent of Congress is clearly expressed, a court must give effect to it. However, if the statute is silent or ambiguous on the issue presented, "the question of the court is whether the agency's answer is based on a permissible construction of the statute."

Judges are not experts in the field, and are not part of either political branch of the Government. Courts must, in some cases, reconcile competing political interests, but not on the basis of the judges' personal policy preferences. In contrast, an agency to which Congress has delegated policy-making responsibilities may, within the limits of that delegation, properly rely upon the incumbent administration's view of wise policy to inform its judgments. While agencies are not directly accountable to the people, the Chief Executive is, and it is entirely appropriate for this political branch of the Government to make such policy choices—resolving the competing interests which Congress itself either inadvertently did not resolve, or intentionally left, to be resolved by the agency

charged with the administration of the statute in light of everyday realities.

When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges—who have no constituency—have a duty to respect legitimate policy choices by those who do. *Id.* at 865–866, 104 S.Ct. at 2792–2793. The Sixth Circuit has interpreted *Chevron* as requiring adherence to the agency's interpretation "absent a finding that the agency's interpretation is untenable." *Gould v. Shalala,* 30 F.3d 714, 719 (6th Cir.1994).

In this case, I agree with the defendant that the application of the salary test to public employers as it existed prior to the 1991 promulgation of § 541.5d is contrary to the intent of Congress and arbitrary and capricious. However, Kentucky's current challenge to the salary test focuses on the wisdom of DOL's policy in failing to eliminate the salary test entirely for public employers rather than in simply amending the test through § 541.5d. Although I agree with the defendant that the application of the amended salary test remains problematic for public employers, I cannot conclude that it is so wholly unreasonable a choice by DOL that it remains arbitrary and capricious. Therefore, as of September 19, 1991, federal courts must respect the choice of the DOL and apply the amended salary test to public employers.

Although the issue presented in this case is one of first impression in the Sixth Circuit,[5] it has been recently decided by the Seventh Circuit, which reversed a district court decision heavily relied on by the defendant. In *Mueller v. Thompson,* 858 F.Supp. 885 (W.D.Wis.1994), *rev'd,* 54 F.3d 438 (7th Cir. 1995), the district court held that the salary test in 541.118(a) could not be applied to

---

**5.** Plaintiffs rely on *Michigan Ass'n of Gov't Employees v. Michigan Dep't of Corrections,* 992 F.2d 82 (6th Cir.1993), in which the Sixth Circuit held that § 541.5d should not be applied retroactively. Plaintiffs argue that the court implied that the salary test applied to public employers prior to the promulgation of § 541.5d, and extrapolate further to argue that the test continued in effect

after § 541.5d was enacted. Although *Michigan Ass'n of Gov't Employees* provides limited support for plaintiffs' position, I agree with the defendant that it does not end the inquiry since the parties and the court apparently assumed that the DOL regulations applied as written to the public sector.

state and local government employees except as amended by § 541.5d because it conflicts with congressional intent. Apart from the district court decision in *Mueller*, which has now been reversed, no other court has held in any published decision that the salary test following the 1991 amendment is inapplicable to public employers.[6]

I follow the Seventh Circuit and hold that the disciplinary prong of the salary test is applicable to public employers following the 1991 amendment. To hold otherwise would be to violate *Chevron*'s mandate that courts express deference to agency discretion, to ignore relevant portions of the administrative record, and to improperly expand the scope of "public accountability" to employer disciplinary systems. *See also Feaser v. City of New York*, 2 WH Cas.2d (BNA) 892, 1994 WL 681631 (S.D.N.Y.1994) declining to follow *Mueller* because "[n]othing indicates that the salary basis test has lost its vitality or that it should not be applied to the public employers in this [Second] circuit."

## A. The Salary Test Prior to September 6, 1991

■ Before discussing the issue of whether the salary test currently applies to public employers, I turn first to the issue of whether the salary test can be applied to public employers prior to its amendment in 1991 by the Department of Labor. Assuming that the salary test is not wholly invalid as applied to public employers, plaintiffs argue that they are entitled to partial summary judgment at the very least on the ground that the Commonwealth impermissibly subjected their pay to deductions for partial-day absences prior to 1991.

As indicated above, the salary test was promulgated by the DOL at a time when the FLSA did not extend to public sector employment. The FLSA became applicable to state and local governments in 1985, following the Supreme Court's opinion in *Garcia*.

After *Garcia*, governmental employers became increasingly concerned about the appli-

cation of the existing salary test. On the one hand, the salary test prohibited deductions from an exempt employee's pay for partial-day deductions. On the other hand, virtually all governmental leave systems established long before the FLSA became applicable to public sector employment prohibited state and local employers from using tax dollars to pay employees for time not worked, obviously without regard to whether the employees were "exempt" or "non-exempt" under the FLSA.

The concern of public employers grew following *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991), in which the Ninth Circuit held that a public employer was not in compliance with the salary test if it was *possible* for an exempt employee to have an impermissible deduction from his or her pay (leave without pay once accrued leave was exhausted), even if the policy had not actually been applied to any exempt employee. Thus, under *Abshire*, public employers were effectively prevented from taking advantage of the white collar exemption to the FLSA because their leave systems, as prescribed by state or local governments, permitted deductions to employees' pay for partial day absences following the exhaustion of accrued leave time. The Department of Labor responded to employer concerns by using an expedited rulemaking process to effect changes in the salary test for public employers.

Through its rulemaking process, the DOL promulgated 29 C.F.R. § 541.5d, which currently permits an employer to make deductions

> according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or

---

6. Two unpublished district court opinions hold that the test cannot be applied to public employers, following the district court decision in *Mueller*. *Freeman v. City of Mobile*, 1994 U.S. Dist. LEXIS 15672 (1994); *Bowman v. City of India-*

*napolis*, 885 F.Supp. 1152 (1994). Both decisions blur the distinction between the salary basis test as it existed prior to 1991 and the test after September 6, 1991.

such employee to be placed on leave without pay. . . .

under specified conditions. Thus, the promulgation of § 541.5d permitted public employers to maintain their existing leave systems and still take advantage of the FLSA's white collar exemption so long as other prerequisites of the salary test were met.

One important issue the promulgation of § 541.5d left unresolved was its retroactivity. Public employees continued to bring suit against their state and local governmental employers for alleged violations of the FLSA between 1985, when *Garcia* was decided, and 1991, when § 541.5d was promulgated. In fact, the plaintiffs in this litigation rely in part on the argument that they are entitled to summary judgment for pre–1991 violations.

Recently, a number of federal courts examining the legislative history of the FLSA and the evolution of the salary test have concluded that the test as it existed prior to the promulgation of § 541.5d cannot be applied to public employers, because to do so would be contrary to the intent of Congress. *See e.g. Mueller,* 858 F.Supp. at 896, *rev'd on other grounds,* 54 F.3d 438; *Service Employees Int'l Union, Local 102 ("SEIU") v. County of San Diego,* 35 F.3d 483 (9th Cir.1994); *Stewart v. City and County of San Francisco,* 834 F.Supp. 1233 (N.D.Cal.1993). I agree with the reasoning expressed in this line of cases, and find particularly persuasive the Ninth Circuit's opinion in *Service Employees Int'l Union, Local 102 ("SEIU") v. County of San Diego.*

In *SEIU,* the court examined the legislative history of amendments to the FLSA and noted that in 1974 when Congress first expressed an intent to make the FLSA applicable to the public sector, it expressed an intent that the FLSA apply to "non-supervisory employees." H.R.Rep. No. 913, 993d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837 (emphasis added). Thus, the *SEIU* court reasoned, Congress must have intended the white collar exemption to apply to the public sector. *SEIU,* 35 F.3d at 487. Congress remained silent as to whether the salary test promulgated by the Department of Labor to define that exemp-

tion applied to the public sector, so under *Chevron,* the question for the courts is whether the agency's application of the test is based on a permissible construction of the FLSA. *Id.*

As previously discussed, virtually all public employers had existing pay systems based on principles of public accountability at the time the FLSA became applicable to them. The existence of the provision of the salary test which prohibited partial day deductions made pursuant to such leave systems effectively precluded public employers from satisfying the salary test.

> The significance of this is that the test deprived public entities of the white collar exemption created by Congress. Thus, the 1954 salary test clearly conflicted with congressional intent that public sector employers be able to claim the administrative and executive exception.

*SEIU,* 35 F.3d at 488–89.

In holding that applying the pre–1991 salary test to public employers was contrary to the intent of Congress, the Ninth Circuit also relied on the fact that in promulgating § 541.5d, the Department of Labor itself conceded that its salary test was "out of harmony with the intent of [the FLSA]." 57 Fed. Reg. 37672 (1992).

> The DOL initially intended the 1992 amendment to the salary test to apply retroactively, *see* 57 Fed.Reg. 37678, but the DOL withdrew the regulation because it concluded that such a change would have constituted invalid retroactive rulemaking under *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). We believe the DOL's interest in applying the new salary test retroactively is indicative of its firm conviction that its earlier iteration of the salary test conflicted with congressional intent. We share this conviction.

*Id.* at 489. I concur with the Ninth Circuit's analysis and conclusion that the salary test as it existed prior to September 6, 1991 was invalid in its entirety as applied to the public sector. *See also Stewart,* 834 F.Supp. at 1238.

## B. The Salary Test Following September 6, 1991

■ The Commonwealth of Kentucky would have this court take the additional step of declaring that the salary test as it currently exists is equally contrary to the intent of Congress and invalid as applied to the public sector. The defendant notes that its existing regulatory disciplinary system technically is incompatible with the requirement implicit in § 541.118(a)(5) that an exempt employee's pay not be subject to deductions for any disciplinary infraction other than a "major safety violation." The defendant argues that the DOL's enactment of § 541.5d without simultaneously altering the disciplinary portion of the salary test for public employers was arbitrary and capricious. I cannot agree. As suggested by the Ninth Circuit in *SEIU*, I conclude that the promulgation of § 541.5d "properly amends the salary test as applied to the public sector, so that the salary test now takes into account long-standing and reasonable state and local ordinances predicated on public accountability." *SEIU*, 35 F.3d at 489. In short, I find that the balance struck by the DOL in amending the partial-leave deduction rule for public employers but in otherwise leaving the salary test intact for those employers is a reasonable one which is not contrary to the intent of Congress.

Drawing from the district court opinion in *Mueller*,[7] the defendant argues that the disciplinary provision of the salary test set out in § 541.118(a)(5) is incompatible with congressional intent for essentially the same reasons as other courts have found the partial-day deduction portion of the test inapplicable to public employers. The defendant argues that the Department of Labor has not formally considered the effects of § 541.118(a)(5) on state and local governments' ability to claim the FLSA exemption.

Although the DOL does not participate here as a party as it did in *Mueller*, the court does have the benefit of the agency's comments prior to and during the rulemaking process which led to the promulgation of

§ 541.5d. Those comments strongly suggest to this court that the DOL has formally considered and thus far rejected further amending the salary test for public employers, including the disciplinary portion of that test. In other words, I conclude that the DOL's promulgation of § 541.5d without otherwise modifying the salary test was a deliberate rather than inadvertent agency decision which is entitled to deference so long as it does not contravene the intent of Congress.

As early as January 9, 1987, through the promulgation of the DOL's Enforcement Policy, the DOL noted that revisions to the salary test were under consideration, including the elimination of the test for the public sector. "A commenter representing public employers has pointed out the problem [of partial-day deductions] and has proposed changes in § 541.118 that would allow deductions to be made for absense[s] of less than a day, or to eliminate the salary test entirely."

The DOL continued to consider more extensive changes to the salary test in the course of promulgating § 541.5d. However, it has consistently and expressly rejected additional modifications to the salary test other than promulgating § 541.5d. In the preamble to the final rule, the DOL describes it as a "special, limited exception" to the salary rule. 57 Fed.Reg. 37666. The DOL expressly noted that it had previously considered modifying or eliminating the salary test following *Garcia*, when it proposed modifications to its regulations both before the 1985 FLSA Amendments went into effect and after those amendments took effect. The same preamble expresses the DOL's intent to modify only certain aspects of the salary basis test, and to leave "all other aspects of the salary test unchanged" as applied to public sector employees. 57 Fed.Reg. 37670. The DOL emphasizes repeatedly that it did not intend to "eliminate altogether the 'salary basis' test in the public sector. A public sector employer must still be able to demonstrate that a claimed exempt employee satisfies all other aspects of the 'salary basis'

---

7. The district court opinion in *Mueller* was still good law at the time the parties briefed and argued this case.

requirements for exemption." 57 Fed.Reg. 37671.

Two specific comments so clearly illustrate the DOL's intent to leave the salary basis test unchanged other than the modifications addressed in § 541.5d that they deserve extensive quotation. In response to a comment that the salary test should be deleted altogether for public sector employment, the DOL responded:

> The Department's IFR was narrowly drafted in response to a demonstrated need to specifically address the particular fact that the existing "salary basis" test in the regulations produced inappropriate results when applied to public sector compensation systems which, based on principles of public accountability, reduce pay for partial-day absences for personal reasons or due to sickness or injury when leave is not used. All other requirements of the salary test were left unchanged as applied to employees in the public sector. *Sufficient justification has not been shown in the comments to warrant eliminating altogether the "salary basis" requirement or making it inapplicable to public sector employees paid above some minimum "upset" salary level.*

57 Fed.Reg. 37673 (emphasis added).

Also dispelling any argument that the DOL has not formally considered modifying the disciplinary provisions to the salary basis test for public employers is the following quotation:

> *Comment:* § 541.118(a)(5) regarding deductions for penalties imposed for infractions of safety rules of major significance should be broadened to include disciplinary suspensions of public sector employees.
>
> Several commenters ... stated that disciplinary situations are unique in the public sector, particularly in organizations like police departments, or different from those of the private sector because public employers have less freedom to terminate employees absent extraordinary circumstances and thus must use disciplinary suspensions without pay to rehabilitate or control behavior; that public employers have virtually no other penalty options; and that suspension for a full week, which

can be done without jeopardizing exempt status, is rarely imposed because of its severity. One commenter ... suggested that disciplinary systems promulgated by statute, ordinance, administrative order, standard procedure, or collective bargaining should be treated in the same manner as the new regulation treats deductions for partial-day absences. One commenter ... noted that such disciplinary systems were in place at the time of the *Garcia* decision and are premised on the concept that public employers should be accountable to the taxpayers for the conduct of public employees. Another commenter ... stated that failure to allow disciplinary deductions in the case of exempt employees could result in inconsistent application of discipline among exempt and non-exempt employees.

> In the Department's judgment, the comments have not suggested a sufficient basis for distinguishing between the public and private sectors with respect to any recommended change in the rule. Although contrary assertions were made, the comments failed to demonstrate that public employers are significantly more restricted in the availability of options with respect to employee discipline than private employers. Although public employee terminations may require compliance with procedures designed to protect employee rights, termination for disciplinary reasons is not generally unavailable. In addition, other remedies for disciplinary infractions, such as official reprimands, demotions, and reassignment or restriction of duties, are generally available and used in the public sector.

> Section 541.118(a)(5) was not open for comment during the present rulemaking. However, the Department expects to consider this issue as appropriate in proposed revisions of Part 541 at a later date.

57 Fed.Reg. 37674. Although the last paragraph to this comment indicates the DOL's view that § 541.118(a)(5) was not technically open for comment and that the agency intended to reconsider the issue "as appropriate" at a later date, the previous paragraphs cannot be ignored. It is apparent from these

comments that the DOL deliberately chose to leave intact the disciplinary portion of the salary basis test for public employers, and expressly rejected virtually all of the arguments now presented by the Commonwealth of Kentucky concerning why the disciplinary provisions should not be applied to the public sector.

■ Having determined that the agency has made a policy decision that the salary test should apply to the public sector except as modified by § 541.5d, it is left to this court to determine whether the agency's policy choice is a reasonable one, or whether it is contrary to the intent of Congress. The defendant argues that the same "principles of public accountability" which led the DOL to promulgate § 541.5d apply with equal force in the disciplinary context. However, I believe that important differences exist between the disciplinary and leave contexts, and that it is reasonable for the DOL to have limited the "principles of public accountability" to the leave context.

The preamble to § 541.5d indicates that the reason for amending the unpaid leave provisions of the salary basis test for public employers related to the existence of "pay systems established according to principles of public accountability." The DOL describes those principles as follows:

> Some State and local government jurisdictions operate pay policies based on constitutional or statutory provisions while others are derived from regulations or policies that have evolved over the years. The rules and procedures of many of these pay systems were in place long before FLSA coverage of the public sector brought on by the 1985 Garcia decision. Such pay systems are generally premised on a concept derived from principles of public accountability that governmental employees should not be paid for time not worked due

to the need to be accountable to the taxpayers for the expenditure of public funds.

57 Fed.Reg. 37667.

The description of principles of public accountability by the DOL repeatedly focuses on the notion that taxpayer funds not be used to pay public employees for hours not worked. A deduction to an employee's salary for a minor disciplinary infraction simply does not involve the same principles, since it does not involve the expenditure of taxpayer funds for hours not worked. In fact, when a commenter suggested the idea that the same principles should be applied in the disciplinary context, the DOL formally rejected that notion,[8] noting that the comments "failed to demonstrate that public employers are significantly more restricted in the availability of options with respect to employee discipline than private employers." 57 Fed.Reg. 37674.

In arguing that the disciplinary prong of the salary test should not be applied to public employers, the defendant stresses the public employer's goal of fairness in implementing a disciplinary policy that does not distinguish between management and non-management employees. The Commonwealth argues that differentiating in the application of discipline between exempt and nonexempt employees under the FLSA will undermine the validity of the discipline and create dissension and morale problems among the work force. However, the same concerns might be said to apply in the private sector.

It is important to remember that the disciplinary prong does not wholly prohibit deductions to a salaried employee's pay for disciplinary violations; it prohibits only partial-week deductions for disciplinary infractions which are "major safety violations." Thus, an employer may impose a disciplinary suspension for any period of time expressed in whole weeks, or may choose to use other disciplinary tools such as official reprimands, demotions, disciplinary tools such as official

---

**8.** That the DOL has intentionally drawn this type of distinction can also be implied from its answer to a formal comment that the modification to the salary basis test should address additional compensation paid by public employers. In response to that comment, the DOL explained that the principles of public accountability which are affected when compensation is paid for hours not worked are not similarly implicated when additional compensation paid to otherwise salaried employees. 57 Fed.Reg. 37673.

reprimands, demotions, reassignment or restriction of duties.

I agree with the DOL that no compelling public policy reasons make the disciplinary prong of the salary test more problematic for public employers than for large-scale private employers such as General Electric or Proctor & Gamble. This agreement does not signify this court's whole-sale approval of the disciplinary prong of the test. In fact, even though it eliminates only one disciplinary tool in the employer's arsenal, the disciplinary portion of the test may be out of step with the realities of today's marketplace in both the public and private contexts. Employers today typically desire greater flexibility in imposing disciplinary sanctions on their employees for serious disciplinary infractions, such as sexual harassment, than § 541.118(a)(5) currently permits. Private employers as well as public employers desire to impose a uniform system of discipline on both salaried professional and non-exempt employees. As the Seventh Circuit recently stated in *Mueller*, 54 F.3d 438, 443, "the state has not shown what is so special about state employment that makes greater disciplinary flexibility than is permitted to the private sector indispensable to the effective functioning of state government."

Perhaps the DOL will modify the disciplinary prong of the salary test at some point in the future to respond to employer concerns, as it has in the past. As pointed out by the district court in *Mueller*:

> It is instructive to note that during World War II, employment policies in the private sector changed as it became common for employers to make disciplinary pay deductions to deter absenteeism. During this period, the Department of Labor changed its regulations to reflect the fact that such deductions were not inconsistent with payment on a salary basis. After the war ended, the practice of disciplinary pay deductions ended and the regulations were revised again to reflect the changed practices.

858 F.Supp. at 894 (citation omitted). If this court had the responsibility of drafting implementing regulations, it is entirely possible that the disciplinary prong of the salary test would be eliminated for both the private and public sector. On the other hand, perhaps there is some merit in drawing a distinction between salaried and non-salaried employees dependant in part on whether the employees' pay is subject to partial-week deductions for such offenses as failing to attend staff meetings or carelessly operating a state vehicle.[9] Regardless of this court's view of the merit of the disciplinary prong of the salary test, even the Commonwealth does not argue that it is outside the DOL's delegated rulemaking authority under all circumstances. Most importantly, the DOL, and not this court, was given the responsibility for implementing the FLSA by Congress.

Having concluded that the agency's decision to apply the disciplinary prong to the public sector was a rational one and was not arbitrary and capricious, this court must defer to that decision unless it is contrary to the intent of Congress. The Commonwealth argues that applying the disciplinary portion of the test to the public sector contravenes the intent of Congress because Congress intended public employers to be able to take advantage of the white collar exemptions when it expanded coverage of the FLSA to public employees. If § 541.118(a)(5) is applicable, the Commonwealth asserts that it will be inappropriately deprived of the opportunity to apply the § 13(a)(1) exemption to any of its white collar employees who otherwise would be properly exempt.

Although I agree with the defendant that the legislative history of the 1974 amendments to the FLSA clearly indicates that Congress intended public employers to be able to take advantage of the white collar exemption, I do not agree that the application of § 541.118(a)(5) forecloses that opportunity. As with other requirements of the FLSA, the Commonwealth may choose to comply in order to take advantage of the exemption, or it may choose not to comply and forego the exemption. The Commonwealth has already demonstrated its ability to come into compliance with § 541.118(a)(5),

---

9. These are but a few of the myriad offenses for which employees of the Commonwealth have been disciplined by partial-week suspensions without pay.

by virtue of the Memorandum it distributed to agency heads on September 19, 1994. Forcing the Commonwealth of Kentucky to make such a choice does not contravene the intent of Congress any more than does forcing private employers to make the same choice.

In fact, other governmental employers appear not to have experienced significantly greater difficulty than their private counterparts in designing disciplinary systems which comply with the requirements. *See e.g. Stewart v. San Francisco*, 834 F.Supp. 1233 (holding that San Francisco was in compliance with the disciplinary provisions of the salary basis test after it halted full enforcement of its disciplinary regulations for exempt employees following the enactment of § 541.5d). *Cf. Shockley v. Newport News*, 997 F.2d 18 (4th Cir.1993) (interpreting § 541.5d to permit *disciplinary* deductions for an employee's failure to report an absence, but focusing on the fact that the deductions related to work absences).

This court's mandated deference to the DOL's regulatory authority disposes of the Commonwealth's argument that, because a different agency in charge of determining who in the federal workforce is covered by the FLSA has chosen not to use the salary test,[10] the DOL ought not to apply the test to state and local governments. It was Congress's prerogative to delegate responsibilities for implementing the FLSA to different agencies for federal employers as opposed to state, local, and private employers. It is not for this court to set aside the DOL's decision to subject state, local, and private employers to the same disciplinary prong of the salary test where that decision does not contravene the intent of Congress.

Ruling that the salary test is viable and applicable to public employers after September 6, 1991 also comports with principles of statutory construction applicable to the FLSA, which is a remedial Act. *See e.g., Arnold v. Kanowsky*, 361 U.S. 388, 80 S.Ct.

453, 4 L.Ed.2d 393 (1960) (exemptions to the FLSA must be strictly construed in favor of the employee); *SEIU*, 35 F.3d at 486 (citing *Abshire* and holding that exemptions to the FLSA must be narrowly construed); *Avery v. City of Talladega, Alabama*, 24 F.3d 1337, 1340 (11th Cir.1994) (exemptions should be construed narrowly, against the employer); *Fleming v. Hawkeye Pearl Button Company*, 113 F.2d 52 (8th Cir.1940).

### C. Constitutional Arguments

■ The Commonwealth makes additional arguments that applying the salary test to it in any form violates the Tenth Amendment, the Guarantee Clause, and the Equal Protection Clause under the Fourteenth Amendment, because it will force the Commonwealth to discipline its employees based upon their FLSA status. I do not find any of the Commonwealth's constitutional arguments to be persuasive.

In *Garcia*, the Supreme Court effectively disposed of the Tenth Amendment issue, holding that nothing in the FLSA "is destructive of state sovereignty or violative of any constitutional provision." *Id.* at 554, 105 S.Ct. at 1019. Although the salary test to which the defendant now objects was not specifically at issue in *Garcia*, at least one court has held that the test itself does not violate the Tenth Amendment. *See Kuchinskas v. Broward County*, 840 F.Supp. 1548, 1553 n. 4 (S.D.Fla.1993). To the extent that defendant's claim under the Guarantee Clause was not resolved by *Garcia*, it is likely non-justiciable under the political question doctrine. *See Colegrove v. Green*, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946) (plurality). Even assuming that such a claim is justiciable, I do not find that the application of the FLSA to the states, including the salary test embodied in the regulations promulgated by the DOL, prevents any state from exercising a republican form of government. *Mueller*, 54 F.3d at p. 443; *See New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (holding that

---

**10.** At the time of the 1974 amendments, Congress granted the federal Civil Service Commission authority to determine who in the federal workforce was covered by the FLSA. The regulations promulgated by that commission and its successor, the Office of Personnel Management, have allowed many federal employers to take advantage of the white collar exemption without complying with a salary test.

assuming justiciability, the facts of that case did not give rise to a Guarantee Clause violation. Finally, there is no equal protection issue as long as the distinction between exempt and non-exempt employees is drawn on a rational basis. *See Railway Express Agency v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). Presumably, compliance with the FLSA would provide a rational basis for drawing such a distinction.

## IV. APPLICATION OF THE SALARY TEST TO THE DEFENDANT

### A. Actual versus Theoretical Deductions

█ The defendant additionally argues that it is entitled to partial summary judgment as to most of the named plaintiffs in this case, because only a handful of the plaintiffs had disciplinary deductions made to their pay, and only one, C. Johnson, was clearly subjected to a partial week suspension.[11] It appears that no actual deductions were made to the pay of the remaining plaintiffs although each was theoretically subject to disciplinary deductions pursuant to Kentucky's disciplinary policies. The Commonwealth argues that only the single plaintiff who was actually subjected to an impermissible deduction is entitled to an award under the FLSA, and that none of the remaining plaintiffs who experienced only the theoretical possibility of such deductions should be given a windfall award under the FLSA.

I conclude that the defendant is not entitled to summary judgment on this basis. In *Abshire v. County of Kern,* the Ninth Circuit held that a public employer was not in compliance with the salary basis test if it was *possible* for an exempt employee to have an impermissible deduction from his or her pay, even if the expressed policy had not actually been applied to any exempt employee. *Abshire* has been criticized[12] and the Ninth Circuit declined to extend its holding in *Barner v. City of Novato,* 17 F.3d 1256 (9th

Cir.1994) (holding that an employer's policy of reducing accrued leave for partial-day absences did not violate the test). However, I am constrained to follow *Abshire* because its holding was cited with approval and applied to a public employer in *Michigan Ass'n of Gov't Employees,* 992 F.2d 82 (6th Cir.1993).

The Commonwealth argues that *Abshire* and *Michigan Ass'n of Gov't Employees* should not be followed because *Abshire* was a private sector case and the public sector/salary test argument was not addressed in *Michigan Ass'n of Gov't Employees.* It is true that some recently decided cases seem to find compelling policy arguments against applying *Abshire* to public employers. *See McGrath v. City of Philadelphia,* 864 F.Supp. 466, 488 (E.D.Pa.1994) (holding that with respect to disciplinary deductions, otherwise exempt employees could recover only if their pay had actually been deducted for a disciplinary infraction). However, not all courts have drawn such a distinction. *See Avery v. Talladega,* 24 F.3d 1337, 1342 (11th Cir.1994) (rejecting city's argument that only the suspended officer should have his salaried status invalidated "because it would favor employees who are disciplined for breaking the rules—and thus become eligible for overtime—over employees who respect those same rules").

In the absence of any clear indication that the Sixth Circuit would overrule *Michigan Ass'n of Gov't Employees* for public employers, it remains the law of this circuit. Accordingly, the defendant is not entitled to summary judgment on this basis.

### B. Window of Correction

█ In an alternative argument, the Commonwealth contends that if the salary test applies, it is entitled to the "window of correction" regulation found at 29 C.F.R. § 541.118(a)(6). That regulation permits an employer who has violated some portion of the salary test to save the claimed exemption under the FLSA under certain conditions.

**11.** At the time this case was briefed and argued, there were 155 plaintiffs in the consolidated action. However, following oral argument, on the joint motions of the parties, the court ordered that other similarly situated plaintiffs be permitted to consolidate their cases into this litigation. The record as to these additional consolidated

plaintiffs has not been developed at this stage of the proceedings.

**12.** *See e.g. Kuchinskas v. Broward County,* 840 F.Supp. 1548; *McGrath v. City of Philadelphia,* 864 F.Supp. at 488 (E.D.Pa.1994).

Specifically, the window of correction rule provides:

> The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. *On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.*

29 C.F.R. § 541.118(a)(6) (emphasis added). Although the regulation uses the disjunctive word "or," the plaintiffs argue that regulation applies only where both conditions are met: a deduction is "inadvertent" *and* "is made for reasons other than lack of work." It is obvious that the disciplinary deductions were not made for reasons other than lack of work, but plaintiffs argue that because the deductions were pursuant to a long-standing policy, they cannot be said to have been inadvertent.

Perhaps not surprisingly given the state of turmoil in applying other aspects of the salary test, the courts have split on the issue of whether the window of correction regulation should be read in the disjunctive or in the conjunctive. *See e.g. Lee v. Flightsafety Services Corp.*, 20 F.3d 428 (11th Cir.1994) (holding that the regulation applies if either condition is met); *Martin v. W.E. Monks & Co.*, 1 F.3d 1241 (Table, unpublished 6th Cir.1993) (same); *Keller v. City of Columbus, Indiana*, 778 F.Supp. 1480 (S.D.Ind.1991) (same). *Contrast Klein v. Rush–Presbyterian–St. Luke's Medical Center*, 990 F.2d 279 (7th Cir.1993) (holding that the regulation should be applied in the conjunctive to require both conditions, in order to effectuate the intent of the Act); *Dole v. Malcolm Pirnie, Inc.*, 758 F.Supp. 899 (S.D.N.Y.1991), *rev'd on other grounds*, 949 F.2d 611 (2d Cir.1991), *cert. denied* —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992) (same); *Pautlitz v. City of Naperville*, 781 F.Supp. 1368, 1373 (N.D.Ill.1992) (same).

Although the Sixth Circuit held that the test should be applied in the disjunctive in the unpublished *Martin*, the majority in *Martin* actually appeared to apply the test in the conjunctive. *Martin*'s somewhat circular logic is aptly criticized by the dissent, but a rational reading is that where an employer has not demonstrated sufficient intent that employees be exempt under the FLSA in light of all the circumstances, then the "window of correction" rule should not be broadly applied to retroactively bring clearly non-exempt employees within the exemption. In short, although it is unpublished, *Martin* provides some support for siding with courts which have determined that the window of correction test should be read in the disjunctive as it was written by the Department of Labor.

The question which remains is whether the Commonwealth may otherwise claim protection under the rule, or whether it should be precluded from doing so because of its long-standing policy which permitted disciplinary deductions to be made to the salaries of otherwise exempt employees. The rule itself is silent on the issue, but some courts have forbidden its use by employers with long-standing policies which permit impermissible deductions. *See e.g. Abshire v. County of Kern*, 908 F.2d at 489 (holding that rule "is for an employer that makes a one-time improper deduction and then corrects its error" and cannot be applied in the face of a long-standing policy); *accord Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 617 (2d Cir.1991). Plaintiffs urge this court to adopt that reasoning, relying in part on the unpublished *Martin*.[13]

Under the circumstances presented here, I am persuaded that the better rule is to per-

---

**13.** Plaintiffs also note that the defendant has admitted that it has been the subject of a Wage and Hour investigation by the DOL since 1985; however, there is no evidence in the record as it exists at this stage as to what that investigation concerns, or whether the DOL has reached any conclusions in the investigation.

mit the Commonwealth to claim the benefit of the window of correction, even though it has long had a policy which permitted disciplinary deductions to be made to otherwise exempt employees. Section 541.118(a)(6) "contains no time limit within which an employer must correct the deduction," *Kuchinskas v. Broward County*, 840 F.Supp. at 1557, and does not on its face offer any indication that it is unavailable to remedy deductions made pursuant to longterm public policies. *Id.; see also Michigan Ass'n v. Michigan*, 849 F.Supp. 1197, 1199 (W.D.Mich.1993) (holding that a state does not lose its exemption if it reimburses affected employees).

Public employers unlike their private counterparts have only recently been subjected to the effects of the salary test. Judicial decisions interpreting that test in the public sector remain in a state of flux. In light of this uncertainty, it would be inequitable, to say the least, to so severely punish the Commonwealth of Kentucky for past violations of a relatively minor portion of the salary test, even though those violations were made pursuant to longstanding policies. *Accord Kuchinskas*, 840 F.Supp. at 1557.

Plaintiffs additionally argue that the defendant has not fulfilled the more basic requirements of the window of correction regulation, because it has not adequately demonstrated its intent to comply with the salary test in the future. On September 19, 1994, the Kentucky Department of Personnel Commissioner Lowell W. Clark issued a memorandum to all Cabinet Secretaries, Agency Heads, and Personnel Executives instructing them in part:

> Pending final resolution of some recent Federal Court decisions and United States Department of Labor opinion letters, the Department of Personnel will decline to process actions for the suspension of employees designated as "exempt" for Fair Labor Standards Act purposes unless:
>
> 1. The suspension is for a period which includes an entire work week (*i.e.*, 37.5 hours) or work weeks, or;
>
> 2. The suspension is for less than one work week *and* is based on a major safety violation.

Thus, the Commonwealth has indicated an intent to comply with the disciplinary prong of the salary test as of September 19, 1994. Plaintiffs' arguments that the memorandum should have been issued to affected employees, or is insufficient as a "temporary" policy, are without merit. I find that the memorandum is sufficiently indicative of the Commonwealth's intent to comply with the requirements of the salary test in the future. Accordingly, I conclude that the defendant is entitled to partial summary judgment on the claims of all named plaintiffs who have not suffered from any actual impermissible deductions under the Commonwealth's disciplinary policies, insofar as their claims rest on an argument that they are non-exempt under the salary test.[14] As to these employees, no reimbursement is required and the Commonwealth's promise to comply with the salary test in the future is sufficient to claim the benefit of the rule. However, as the Commonwealth has not offered any evidence that it has made reimbursement to at least one employee actually affected by the impermissible policy, I will deny defendant's motion for summary judgment as to that plaintiff, as well as any others who may be similarly situated. Because additional plaintiffs have been consolidated into this litigation since this case was initially briefed and argued, the record is not sufficiently developed at this juncture for the court to determine which named plaintiffs other than C. Johnson might be able to proceed under the analysis set forth herein.

## V. CONCLUSION

Needless to say, this is a difficult case. I conclude that the salary test prior to September 6, 1991 cannot be validly applied to the Commonwealth of Kentucky. To the extent that plaintiffs' claims rest upon the application of the salary test prior to that date, the defendant is entitled to summary judgment. However, given Sixth Circuit precedent, administrative and legislative history, and the

---

14. This opinion concerns only the parties' cross-motions for partial summary judgment on the application of the salary basis test. Thus, the court expresses no opinion on whether the named plaintiffs would be otherwise exempt from the provisions of the FLSA.

938

court's limited role as described in *Chevron,* I further conclude that the promulgation of the interim rule which became § 541.5d effective on September 6, 1991 cured the defects inherent in applying the salary test to the public sector, so that the test became a valid one as of that date. Although the Commonwealth was in violation of the salary test after September 6, 1991 as to all plaintiffs, the Commonwealth is entitled to partial summary judgment as to the claims of most plaintiffs, insofar as those claims rest on the application of the salary test, because the Commonwealth has met the requirements of the window of correction rule in § 541.118(a)(6).

### *ORDER*

On February 10, 1995, oral argument was heard on the defendant's motion for partial summary judgment. The motion has been extensively briefed by both parties, and the court having been fully advised, IT IS ORDERED THAT defendant's motion for partial summary judgment is GRANTED in part and DENIED in part as set forth in the Memorandum Opinion filed herewith.

IT IS FURTHER ORDERED THAT plaintiffs' motion for partial summary judgment is DENIED.